## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DOUGLAS J. RICHARDSON,

   Plaintiff,

v.          Case No:  2:14-cv-703-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

_____

## ORDER

 Plaintiff Douglas J. Richardson seeks judicial review of the denial of his disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is affirmed.

### I. Issues on Appeal

 Plaintiff raises three issues on appeal:[1] (1) whether the Administrative Law Judge Maria C. Northington (the "ALJ") erred in Plaintiff's evaluation of pain and in the assessment of the residual functional capacity ("RFC"); (2) whether the ALJ erred in failing to evaluate Plaintiff's symptom of fatigue; and (3) whether the ALJ failed

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ([A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), cited in *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

to conduct proper inquisitorial proceedings.[2]

## II.   Procedural History and Summary of the ALJ Decision

On July 9, 2011, Plaintiff applied for DIB benefits, alleging disability beginning on January 1, 2011 or July 1, 2011.[3]   The claims initially were denied on September 28, 2011, and upon reconsideration on February 22, 2012.   Tr. 102-11. Plaintiff requested and received a hearing before the ALJ on March 3, 2014, during which he was represented by an attorney.   Tr. 47.   Plaintiff and vocational expert ("VE") Jeffery W. Lucas testified at the hearing.   Tr. 15, 47-91.   The ALJ issued an unfavorable opinion on May 1, 2014.   Tr. 15-25.

Initially, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act on December 31, 2013.   Tr. 17.   At step one, the ALJ concluded that Plaintiff has not engaged in any substantial gainful activity during the period of July 1, 2011 through his date last insured, December 31, 2013.   *Id.*   At step two, the ALJ found that Plaintiff "had the following severe impairments: marked thorocolumbar (sic) scoliosis since at least 1980."   *Id.*   At step three, the ALJ

---

[2]      Plaintiff presented the fatigue issue as the first issue and the pain issue as the second issue; however, because the Court's analysis of these issues is intertwined, the Court has changed their sequential order for better clarity.

[3]      Plaintiff aptly explains the discrepancies in the alleged onset dates, "[t]he Application has January 1, 2011 as the alleged onset date [Tr. 177], and in the Disability Report - Adult - Form SSA-3368 Plaintiff states he had to make changes in his activities January 1, 2011 [Tr. 236], but documents completed by Social [S]ecurity personnel, namely the Disability Report-Field Office-Form SSA 3367, the Disability Determination Explanation at the Initial level, and the Disability Determination Explanation at the Reconsideration level identify the alleged onset date as July 1, 2011 [Tr. 231, 93, 104], and the ALJ at the hearing and in her Decision identified the date of alleged disability as July 1, 2011. [Tr. 49, 15]."   Doc. 21 at 1 n.1.   While Plaintiff explains the discrepancy, he has not raised an issue of it.

concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . ." Tr. 18.   The ALJ determined that Plaintiff had the RFC to perform

> a wide range of light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the Dictionary of Occupational Titles (D.O.T.) and regulations, as well as, lift/carry 10 pounds frequently. This includes sedentary work as defined in Dictionary of Occupational Titles (D.O.T.) and the regulations. There are no limits for sitting in an eight-hour workday with standing and/or walking for up to six hours in an eight-hour workday. The claimant is capable of performing all postural functions except no crawling, no kneeling, and no climbing of ladders/ropes/scaffolds. The claimant is able to perform sustained work activity on a regular and continuous basis for eight hours per day, forty hours per week.

Tr. 18-19. The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and the limiting effects of the symptoms are not fully credible.   Tr. 21.   Next, the ALJ found that Plaintiff was capable of performing his past relevant work ("PRW") in sales of musical instruments and manager of a retail/music store.   Tr. 22-23.   The ALJ noted "[t]his work did not require the performance of work-related activities precluded by the claimant's residual functional capacity."   *Id.*   The ALJ made this determination based on the testimony of Plaintiff and the VE.   Tr. 23.   The ALJ proceeded to make alternative findings for step five of the sequential evaluation process.   *Id.*

In considering Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, and relying on the VE's

testimony, the ALJ concluded at step five that Plaintiff was capable of performing other work that exists in significant numbers in the national economy.   Tr. 23-25. Specifically, the VE testified that Plaintiff's PRW of instrument repair included skills that transferred to occupations within Plaintiff's RFC, such as fretted instrument inspector and sliding joint maker.   Tr. 24.   Additionally, Plaintiff's PRW of musical instrument sales and store manager included skills that transferred to occupations within Plaintiff's RFC, such as music salesperson.   Tr. 24.   The VE also testified that Plaintiff was capable of performing other relevant work that exists in significant numbers in the national economy, namely as marker.   *Id.*   Thus, the ALJ ruled that Plaintiff had not been disabled through the date of the decision.   Tr. 25.   On July 23, 2014, the Appeals Council denied Plaintiff's request for review.   Tr. 4-9.   The ALJ's May 1, 2014 opinion, therefore, is the final decision of the Commissioner.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to either result in death or last for a continuous period of not less than twelve months.   20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §§ 404.1520.   The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the

claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The Eleventh Circuit has noted that the Commissioner's burden at step five is temporary, because "[i]f the Commissioner presents evidence that other work exists in significant numbers in the national economy, 'to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.'" *Atha*, 616 F. App'x at 933 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir.2001)). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206,

1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

IV.   **Analysis**

a.   *Whether the ALJ erred in the evaluation of pain and in the assessment of the RFC*

Plaintiff argues that the ALJ erred when she did not fully credit Plaintiff's pain assertions due to her finding that his pain was controlled and well-managed with medication.   Doc. 21 at 17.   According to Plaintiff, this is not an accurate recounting of the medical evidence because Plaintiff's pain was not controlled and managed with medication only but in conjunction with lack of activity.   *Id.*   Plaintiff also argues

that the ALJ improperly asserted that Plaintiff's scoliosis was static and he should be able to do today what he did years ago. *Id.* This argument stems from the ALJ's finding that "claimant indicated having suffered from scoliosis from [sic] decades. Nothing in the record suggests that claimant's condition recently worsened such that he cannot engage in activities similar to those in the past." Tr. 21. Plaintiff further argues that the ALJ erred in assessing Plaintiff's daily activities and work activity because Plaintiff's work activity did not rise to the level in the SGA guidelines. Doc. 21 at 19. In response, the Commissioner argues that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence.

When an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1520(e). Here, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." Tr. 18. The ALJ then proceeded to assess and make a finding regarding the Plaintiff's RFC. The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a); *Phillips v. Barnhart*, 357 F.3d at 1232, 1238 (11th Cir. 2004). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a).

Furthermore, the claimant's age, education, work experience and whether  he can return to his past relevant work are considered in determining his RFC. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §  404.1520(f)).

In this case, the ALJ determined Plaintiff's RFC by taking into account Plaintiff's testimony regarding his education, work experience, and daily activities. Tr. 19.   The ALJ considered Plaintiff's medical records from 2011 through 2013 and discussed them in detail.   Tr. 19-22.   In terms of Plaintiff's pain and physical impairments, the ALJ found that objective evidence did not support his allegations of the severity of the pain and the degree of limitation he alleged.   Tr. 21.   This was proper for the ALJ to do.   *See* 20 C.F.R. §404.1529(c)(2).

When assessing the credibility of subjective complaints, such as pain or fatigue, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).   The pain standard "is fully consistent with the Secretary's regulations." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work.   *See* 20 C.F.R. §

404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561.   The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. § 404.1529(c).   "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."   *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Here, the ALJ found that there was an underlying medical condition, which was scoliosis.   Tr. 19-22.   With respect to the second prong of the pain standard, the ALJ did not find that the objective medical evidence confirmed the severity of the pain alleged.   *Id.*   Related to the third prong of the pain standard, the ALJ found that there was objective medical evidence indicating that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[;]" however, not as severe as he alleged.   Tr. 21.   The ALJ then considered Plaintiff's statements regarding the intensity and persistence of the symptoms to determine how the symptoms limit Plaintiff's capacity for work.   Tr. 21-22.   She considered his testimony that "he cannot work anymore due to pain and lack of concentration."   Tr. 19.   The ALJ found that Plaintiff's statements were "not entirely credible to the extent that all work is precluded" and articulated her reasons for this finding.   Tr. 21.   The ALJ compared Plaintiff's statements with the objective medical evidence, his treatment, and medications received, and reached her

conclusion that Plaintiff's "subjective pain complaints are not fully credible and the record supports this inconsistency of subjective complaints versus objective findings on examination . . . . The objective findings on examination support good motor strength, intact neurological findings and no evidence of atrophy."   Tr. 22. Moreover, the ALJ found,

> Repeated examination in 2011 showed only minimal degenerative changes and few limitations. Neurological function was normal. Radiographic studies did not show any significant osteoarthritis processes. Notes from September 2011 showed claimant to have full grip strength, full lower extremity strength, claimant can ambulate independently, and claimant can perform fine or gross manipulations on a sustained basis. Bilateral upper extremity EMG and nerve conduction studies were unremarkable. Cervical MRI showed only mild abnormalities if any. Examination in early 2012 showed a normal range of motion in all joints and extremities including shoulders, elbows, forearms, wrists, hips, knees, ankles, lumbar spine, and cervical spine. His gait was normal and he was able to walk on his heels and toes without difficulty.
>
> Claimant could fully squat and his stance was normal. He needed no help changing for the exam or ascending or descending from the examining table. Neurological function was normal. No sensory deficits were observed. Claimant had full muscle and grip strength. Hand and finger dexterity were intact. Claimant performed all of his personal care activities independently. Later in 2012 and 2013, regular treatment records show claimant to have reported generally well managed pain and good physical examinations. In May 2012, examination showed a normal mood, affect, strength, gait, and neurological function. No sensory deficit was seen. In June, examination was unremarkable but for a reduced range of motion in the cervical spine and reported tenderness to palpitation. Later in 2012, claimant reported minimal pain and his chronic condition appeared well managed. Claimant continued to function well generally into November 2013. Examination was unremarkable but for mild tenderness to palpitation and decreased cervical range of motion. Also notably, claimant indicated having suffered from scoliosis from [sic] decades. Nothing in the record suggests that claimant's condition recently worsened such that he cannot engage in activities similar to those he has in the past.

Tr. 21.

Upon a review of the full record, the Court finds that substantial evidence supports the ALJ's adverse credibility determination.   For example, clinical examinations in Plaintiff's record reveal that Plaintiff appeared alert and oriented, in no acute distress, and he generally had a full range of motion in his extremities and had full grip strength, although he at times displayed decreased range of motion of the cervical spine.   Tr. 307, 343-44, 379, 381, 383, 385-87, 389-93, 395-96, 399, 402-03, 406-07, 421, 424, 428, 439.   The record demonstrates that Plaintiff's neurological examinations also were normal, with intact strength in his upper and lower extremities, negative straight leg raising, with no sensory deficits noted, and no pathologic reflexes, although at times he did have some tenderness to the left cervical paraspinal muscles and decreased range of motion of the cervical spine.   Tr. 307, 344, 379, 381-82, 383, 385-87, 389-90, 392-93, 395-96, 403, 406-07, 445. Plaintiff had normal gait and strength, and he occasionally used a cane; but the cane was not prescribed.   Tr. 324, 339, 343-44, 379, 382-83, 387, 389-90, 392-93, 395, 399, 402, 407, 445.   On July 15, 2015, Plaintiff presented to Dr. Adam M. Shuster using a cane for ambulation.   Tr. 399.   During this visit, Plaintiff wanted a wheelchair but Dr. Shuster recommended against it.   Tr. 400.

Additionally, X-rays of Plaintiff's thoracolumbar spine revealed scoliosis but only mild degenerative changes with no evidence of vertebral anomaly.   Tr. 307, 412-13.   X-rays and an MRI scan of his cervical spine revealed mild multilevel degenerative changes, did not show any neurocompressive disease, and there was no

identified instability, disc herniation, or spinal stenosis.   Tr. 307, 330, 375, 379.   On December 13, 2011, in the same visit that Dr. Douglas Richardson discussed Plaintiff's MRI report, the physician noted "[a]t this point, I am not real sure why the patient has had significant worsening of pain recently.   He seems to have some chronic scoliotic curvature noted, but does describe worsening pain."   Tr. 330.   On January 11, 2011, Dr. Richardson noted that Plaintiff's "radiographic studies [did] not show any significant osteoarthritis process.   He may have [had] some very mild degenerative changes, but these are very mild and certainly consistent with his age."   Tr. 305.   X-rays of his left and right knee revealed "minimal narrowing of the medial compartment of the tibiofemoral joint of the left knee," which was "likely degenerative in nature," but "there was no acute bony abnormality identified," and there was no fracture or dislocation in his right knee.   Tr. 414-15.   Plaintiff's bilateral X-ray of the hips showed only mild degenerative changes, with no acute abnormality of the left or right hip.   Tr. 416.   The foregoing also supports the ALJ's finding that "nothing in the record suggests that claimant's condition recently worsened such that he cannot engage in activities similar to those he has in the past."

The ALJ also considered Plaintiff's work activity of repairing and restoring guitars after his alleged onset date, despite that such activity did not rise to the level of SGA guidelines, as Plaintiff notes.   Tr. 17, Doc. 21 at 18-19.   This was proper for the ALJ to do.   As the Eleventh Circuit has discussed, "[e]ven if a claimant's current employment status is not at the level of SGA, it may indicate that [he] is able to do more work. The ALJ makes this determination by considering the claimant's

physical, mental, and other abilities affected by the impairments." *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1571, 404.1545(b)-(d)).   Thus, the ALJ properly considered Plaintiff's work activity.

Plaintiff argues that the ALJ erred in finding that Plaintiff's pain was controlled with medication only because the record reveals that it was the combination of the medications and the lack of activities that controlled his pain.   Doc. 21 at 17. First, the ALJ did not discredit Plaintiff's testimony solely because she believed the medication controlled his pain.   As discussed above, she considered the total objective medical evidence and found it to be inconsistent with Plaintiff's statements regarding the severity of his pain.   Plaintiff also relies on three medical notations from his pain management physician, Dr. Shuster, who opined that Plaintiff needed to use non-medication options to control his pain.   *Id.*   This portion of the record on which Plaintiff relies reveals that it was Plaintiff's subjective explanation of his pain during his follow-up visits with Dr. Shuster, in which Plaintiff described the pain as more tolerated with lack of activities, and not the physician's findings. *See* Tr. 381, 383, 386, 388, 390, 391.   The ALJ addressed this matter when she found Plaintiff's subjective statements not to be fully credible.   Tr. 21.   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971)).

Dr. Shuster's records do not suggest that it was the physician's opinion that Plaintiff not engage in work or physical activities.   During the three visits when Dr. Shuster opined that Plaintiff needed to use non-medication options to control his pain, Dr. Shuster reviewed with Plaintiff goals of pain management, increased functionality, and decreased pain.   Tr. 404, 408, 412.   Dr. Shuster noted that "counseling regarding these issues was done today, in particular, exercise program, limiting medication usage, side effects of medications, and continue with current analgesic approach, exercise and walking program to be consistently increased."   *Id.* Dr. Shuster then concluded: "Doug Richardson . . . needs to continue to explore non-medication options to control his pain."   *Id.*   Thus, it is not as clear as Plaintiff would suggest that Dr. Shuster meant that Plaintiff should not work.   More likely, Dr. Shuster was recommending an exercise and walking program, as he records in his notes.   *Id.*

Notably, opinions on some issues such as the claimant's RFC and whether the claimant is disabled or unable to work "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); SSR 96- 5p. Thus, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d)(1).   In any event, it is not the function of this Court to speculate on the evidence, decide facts anew, or reweigh the evidence. *See Phillips,* 357 F.3d at 1238 n.8 ("We may not decide the facts

anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.") (internal citation omitted).   Additionally, "[t]he question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The record reveals no reversible error in the ALJ's assessment of Plaintiff's credibility concerning his subjective complaint of pain.   Once the ALJ determined that objective medical evidence did not confirm the severity of Plaintiff's pain but indicated that Plaintiff's impairments could reasonably be expected to cause *some* degree of pain, the ALJ properly evaluated the intensity and persistence of Plaintiff's pain and its effect on Plaintiff's ability to work.   The ALJ compared Plaintiff's statements with the objective medical evidence and found his statements to be not fully credible.   Substantial evidence supports the ALJ's adverse credibility determination.   "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court."   *Foote*, 67 F.3d at 1562.

b.   *Whether the ALJ erred in failing to evaluate Plaintiff's symptom of fatigue*

Plaintiff argues that the ALJ "never explicitly mentioned Plaintiff's fatigue" and erred in failing to account for Plaintiff's symptom of fatigue, which is a known symptom of scoliosis.   This failure, according to Plaintiff, prevented the ALJ from conducting a meaningful analysis of the effect of the symptom on Plaintiff's ability to work.   Doc. 21 at 14-17.   "A symptom is an individual's own description of his or her physical or mental impairment(s)," and may include pain, fatigue, weakness, or

shortness of breath.   SSR 96-7, 1996 WL 374186, at *1; see also 20 C.F.R. 404.1529.

As discussed above, the Eleventh Circuit has articulated a standard for assessing

pain and other subjective symptoms.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson*,

284 F.3d at 1225-26; *Holt*, 921 F.2d at 1223.

While the ALJ did not explicitly address Plaintiff's fatigue in her opinion, it is

evident from the ALJ's questioning of Plaintiff at the hearing and from her written

decision that she considered fatigue as one of his symptoms or as a limiting effect of

his symptoms.   For example, after the Plaintiff testified that he stopped working

because his increased pain was a "big factor" and he was napping at work, the ALJ

asked Plaintiff about his fatigue, and the following exchange ensued:

> ALJ:      What's the cause of the fatigue?
>
> Plaintiff:   I asked Dr. Vanwinkle about that, and we - - I did a
> lot of blood work to try to find out what it is, and her
> best estimate on that is it's just the amount of pain
> that my body is in, it is shutting itself down. And
> that's the only way that my body knows how to heal,
> is to go lay me down and sleep, and then try to heal
> from the pain that I've had to suffer, and then I try to
> get back up, but because I can't sleep at night it's like
> I never, ever, get rested.   So I'm always tired, I'm
> constantly fatigued, and I have trouble focusing.
> And I can't remember what I did, or I put strings
> backwards, I have to redo it, and I break stuff all the
> time, it's like I said, it's kind of pathetic really.
>
> ALJ:      Now, the labs - - when Dr. Vanwinkle did all the labs,
> the labs were negative?
>
> Plaintiff:   Yes, it didn't show any like - - I had some cholesterol
> problems that I didn't know about, but it didn't show
> any, you know, low iron, or low testosterone, or
> anything like that, that could be compensated for to a

try to make a - - make me feel more alert or not so
tired.

Tr. 60-61.   The ALJ also questioned Plaintiff about the effect of his lack of sleep, to

which he responded, "[i]t makes it very hard for me to concentrate, and I think it

contributes to my chronic fatigue as well."   Tr. 79.

In her written opinion, the ALJ cited SSR 96-7p and "20 C.F.R. 404.1529,[4]

which contains the same language regarding the subjective pain testimony that [the

Eleventh Circuit] interpreted when initially establishing its three-part pain

standard."   *Wilson*, 284 F.3d at 1226 (citing *Elam*, 921 F.2d at 1214-15).   Section

404.1529(c)(4) of the regulations identifies how the agency evaluates subjective

symptoms, including fatigue; and, as noted by the ALJ are consistent with the pain

standard in the Eleventh Circuit.   *See* 20 C.F.R. 404.1529(c)(4);*Elam*, 921 F.2d at

1215.   The ALJ properly applied the legal standard in assessing Plaintiff's fatigue

and in making her credibility determination, as the Court discussed it in detail in the

previous section.   *See Wilson*, 284 F.3d at 1226; *Veasey v. Astrue*, No. CIV.A. 1:06-

CV-1909A, 2008 WL 504388, at *10 (N.D. Ga. Feb. 21, 2008).   During his testimony,

Plaintiff related his fatigue to pain, and the ALJ extensively discussed his pain

allegations.   The ALJ discussed Plaintiff's pain and "other symptoms" and

concluded, "[a]lthough the claimant's subjective complaints may have some merit, the

totality of the supporting medical evidence does not provide clinical correlation of his

_____

[4] The ALJ cited "§404.15290(c)(4)" which appears to be a typographical error; however
her discussion in that paragraph outlines the standards clearly enunciated in 20 C.F.R.
404.1529(c)(4).

symptomology to the degree of debility alleged with objective findings on examination." Tr. 22. Moreover, she found his "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely credible to the extent that all work is precluded." Tr. 21.

The Eleventh Circuit has held that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" that is insufficient to permit the district court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211; *see also East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2006) ("Although the ALJ must consider all the impairments the claimant alleges in determining whether the claimant is disabled, the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant.") (internal citations omitted); *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014).

Moreover, Plaintiff has presented no legal authority that requires an ALJ to consider every single symptom alleged by a claimant. *See* Doc. 21 at 14-17. In the instant case, Plaintiff's primary complaint was pain. Plaintiff alleged disability due to the following conditions: triple scoliosis, cervical arthritis, left inguinal hernia, leg length discrepancy of one inch, torn rotator cuff R&L, twisted ribcage, protruding right shoulder blade, severe hip pain R&L, severe heel pain R&L, and chronic insomnia. Tr. 235. On the paperwork that Plaintiff completed during the administrative process, his testimony, and his subjective complaints during his

medical visits, there is minimal, and sometimes no discussion of his fatigue.   *See* Tr. 244-51, 255-63, 271-278, 287-88 (paperwork), 47-92 (testimony), Tr. 300-344, 375-509 (medical reports).

For example, in the paperwork in which Plaintiff discussed his fatigue, Plaintiff mentioned fatigue in one long letter dated September 26, 2011, in which he stated "my reality is chronic pain, stiffness, agony and chronic fatigue."   Tr. 262-63. At the hearing, Plaintiff's testimony can be characterized as more focused on the issue of his pain.   Plaintiff testified that he tried to run a small guitar repair business from his home, offering full guitar restoration.   Tr. 55, 57.   He repaired about two guitars per month, and stated that the restringing of the guitar was "extremely painful" for his shoulder and neck.   Tr. 56-57.   In the past, Plaintiff worked in a music store performing sales and repairs.   Tr. 59.   Increased pain, napping at work, and other unrelated factors caused him to stop working.   Tr. 59-60.   He testified that whenever he tried to push himself, he experienced pain, his knees got weak, and he needed to lay down.   Tr. 60.   He further testified, "I'm always tired, I'm constantly fatigued, and I have trouble focusing."   *Id.*   As noted previously, the ALJ expressly questioned him about the cause of the fatigue, and Plaintiff stated that his treating doctor's "best estimate" on the cause of the fatigue was that his body was "shutting itself down" due to the amount of pain that he is in.   *Id.*, Tr. 72.   He could only perform basic activities, such as surfing the internet, for fifteen to twenty minutes at a time before he felt worn out, the "severe[]" pain would "start kicking in," and he needed to take a nap.   Tr. 64, 80.   Plaintiff did not feel that his pain was stable on

medications.   Tr. 71.   He testified that stooping or crouching would be "incredibly painful" and he had difficulties bending from the waist.   Tr. 78.   He also testified that he has difficulty sleeping at night due to his pain, which makes it hard for him to concentrate.   Tr. 79.   Thus, Plaintiff's testimony can be characterized as more focused on the issue of his pain.   When he mentioned fatigue during his testimony, the cause of the fatigue, based on his understanding, was the pain.

Furthermore, his medical visits reveal only subjective and sporadic complaints of fatigue. During one of his medical visits on November 21, 2012, in which he mentions fatigue to Dr. Shuster, Plaintiff reported that he was always tired and fatigued due to, what he believed was, "chronic wearing down of the body."   Tr. 391. Of all the medical records from 2011 to 2013, there are only five other instances in which Plaintiff presented the symptom of fatigue, along with a list of several other symptoms to his physician, on which Plaintiff relies.   Tr. 444-46, 420-22, 438-40, 427-29, 423-25.   On one visit on June 17, 2012, Plaintiff's primary complaints for the visit were fatigue, along with scoliosis, and shortness of breath.   Tr. 444-46.   The doctor's assessment and plan for the fatigue was Vitamin B-12.   *Id.*   The following month, Plaintiff presented for a six week follow-up on his elevated blood pressure, in which he listed fatigue as a symptom.   Tr.   438-39.   The remaining visits in which Plaintiff presented the symptom of fatigue occurred in February 2013, June 2013, and October 2013, which were are follow-up visits for his cholesterol check.   Tr. 427-29, 423-25, 420-21.   The doctor's assessment and plan did not include any notations for fatigue in these visits.   Thus, the record reveals only subjective and sporadic

complaints of fatigue. The ALJ expressly considered these medical records in the context of Plaintiff's high blood pressure and hyperlipidemia. Tr. 18 (referring to 12F). Additionally, the ALJ considered his claims of "pain and lack of concentration" as testified. Tr. 19.

Moreover, while Plaintiff has cited certain internet sources that show fatigue can be a symptom of scoliosis, he presented no evidence to show that his alleged fatigue caused work-related limitations beyond those included in the ALJ's RFC findings. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (holding that the claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("The mere existence of [an] impairment[] does not reveal the extent to which [the impairment] limit[s a Plaintiff's] ability to work or undermine the ALJ's determination in that regard."). The record reveals no reversible error in the ALJ's assessment of Plaintiff's fatigue.

c.    *Whether the ALJ failed to conduct inquisitorial proceedings*

Lastly, Plaintiff argues that the ALJ erred in failing to conduct inquisitorial proceedings because "[i]t is clear from the evidence that Plaintiff's condition deteriorated over the period in question." Doc. 21 at 20. Plaintiff gives examples that he was more active in 2008 through 2010; and evidence shows more restriction in 2011. Moreover, argues Plaintiff, "the 2012 evidence is more significant in the description of his disability than the 2011 evidence." *Id.* Plaintiff directs the Court to compare Dr. Allen C. Tafel's records from 2011 and Dr. Adam M. Shuster's records

from 2012 to 2013.   *Id.*   He further argues that his knees began to bother him in 2013, and his hips required treatment for the first time in 2013.   *Id.*   Plaintiff sums up his argument as follows

> [e]ven if Plaintiff's medical evidence was insufficient in 2011, his condition was more severe in 2012, and again more severe than that in 2013. The ALJ is not supposed to just consider one point in time, but is to consider each time period and each medical development independently. Therefore, even if the ALJ's decision is sustainable for 2011, there is a point in time in 2012 or 2013 when it no longer is supported by substantial evidence and must be reversed."

*Id.*

The Supreme Court has stated that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).   Plaintiff's arguments are unfounded.   The ALJ conducted a hearing, questioned Plaintiff extensively and considered the medical evidence from 2011 through 2014.   Tr. 15-25, 47-92.   Even a cursory review of the ALJ's decision reveals that she considered the medical evidence from 2011 through early 2014, and she expressly discussed the matters of which Plaintiff complains.   Tr. 15-25.   She considered his knee pains and acknowledged that "X-ray of claimant's knees in 2013 showed minimal degenerative changes or were wholly unremarkable."   Tr. 18.   She began her discussion on the RFC findings with Plaintiff's testimony and considered his work activity from 2001 to 2008 and noted that "increased pain, napping and other unrelated reasons caused him to have to stop working."   Tr. 19.   She began her discussion of the medical evidence in a chronological order, starting with his medical

records from 2011 (Tr. 19) and continued through 2012, 2013, and early 2014. Tr. 20-22. She expressly considered Dr. Shuster's records, which were marked as Exhibit 11F in the record, and discussed them in detail in several portions of her decision. Tr. 20-22, 376-416. Thus, Plaintiff has failed to show that the ALJ erred in the manner in which she conducted her proceedings in this matter.

## V. Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 25th day of March, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record